IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCUS J. RILEY, | : | |
| | : | |
| Petitioner, | : | |
| | : | 1:12-cv-1977 |
| v. | : | |
| | : | Hon. John E. Jones III |
| SUPERINTENDENT DAVID A. | : | |
| VARANO, *et al.,* | : | |
| | : | |
| Respondent. | : | |

## MEMORANDUM

### January 27, 2014

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Petitioner Marcus J. Riley ("Petitioner" or "Riley"), an inmate presently

confined at the State Correctional Institution in Coal Township, Pennsylvania

("SCI Coal Township"), commenced this *pro se* action by filing a Petition for Writ

of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2254.  (Doc. 1).

Riley challenges his 2008 conviction in the Court of Common Pleas of Franklin

County, Pennsylvania.  (*Id.*).  For the reasons that follow, the Petition will be

denied.

## I.   BACKGROUND

On September 29, 2008, following a jury trial in the Court of Common Pleas

of Franklin County, Riley was convicted of Rape by Forcible Compulsion,

Involuntary Deviate Sexual Intercourse by Forcible Compulsion, Indecent Assault

by Forcible Compulsion, Sexual Assault, Simple Assault, Burglary, and Criminal

Trespass.  (Doc. 12-10, Ex. 9, p. 7, *Commonwealth v. Riley,* No. 226-2008; 207-

2008, Opinion and Order of PCRA Court).  Riley was sentenced on January 28,

2009.  (Doc. 1).

The PCRA Court set forth the following relevant facts to Riley's criminal

case, as follows:

> [Riley] began a romantic relationship in May of 2007 with the victim in both
> [] cases, [the victim].[1]  (*See* Transcript of Proceedings in Jury Trial,
> Monday, September 29, 2008 [hereinafter T.P. Trial], at 35-36.)  The two
> moved in together, first in [Riley's] mother's home, later moving to an
> apartment in Greencastle, Pennsylvania.  (*See id.* at 36-37.)  At the
> beginning of November, 2007, [Riley] moved from their shared residence,
> telling the victim he did not retain a key.  (*See id.* at 37.)  The victim was
> attempting to end their relationship despite [Riley's] resistance, including
> following her around at their shared place of employment and causing other
> difficulties in an attempt to prevent their breakup.  (*See id.* at 37-38.)

> On the morning of November 12, 2007, [the victim] returned to the
> apartment in Greencastle following an eleven o'clock p.m. to seven o'clock
> a.m. shift.  (*See id.* at 38.)  Upon hearing a knock, the victim opened her
> front door to find [Riley], who pushed into the home and began striking her
> repeatedly in the face with closed fists.  (*See id.* at 39.)  Jealous after
> witnessing an exchange between [the victim] and another co-worker the day
> before, Riley hit her some twenty (20) to thirty (30) times while she begged
> him to cease.  (*See id.* at 39.)  [Riley] eventually stopped his onslaught,
> dragging the victim into the bathroom to try to wipe off her bloody face with
> a towel.  (*See id.* at 39-40.)  While the victim sat where she had fallen on the
> floor, Riley exited the residence, stopping only to break her home telephone
> in half and steal her house key.  (*See id.* at 40.)  After waiting for him to

---

[1] For the privacy of the victim, we have redacted her name from the opinion.  (*See* Doc. 12-16,
Ex. 15, p. 4 "Superior Court PCRA Appeal Decision").

leave, [the victim] went downstairs to a neighboring apartment and asked them to phone 911.  (*See id.*).  At Waynesboro Hospital, the victim was treated for lacerations on her face, a tear on the side of her nose, a swollen lip, and a severe hematoma on the top of her head.  (*See id.* at 41-44; Commonwealth Trial Exhibit Number [hereinafter C.T.E. No.] 2, 3, 4.)

As often occurs in such twisted relationships, the victim was persuaded by [Riley] to forgive him and remain a couple.  (*See* T.P. Trial, at 45-46.) Learning at the end of November that she was pregnant with Riley's child, the victim vacated the Greencastle apartment and stayed for several weeks in the home of [Riley's] mother.  (*See id.*)  During this time, Police Officer Creager called [the victim] several times regarding the November 12 incident and the prosecution of [Riley] therefore.  (*See id.* at 46.)  Under the pressure of [Riley], the victim did not appear in Court, yet neither did she request the charges against him be dropped or recant her assertion of his accountability.  (*See id.* at 47.)  By January 1, 2008, [the victim] had moved to the home of her parents, testifying she had finally resolved to permanently terminate her relationship with [Riley].  Having lost her position at her previous job, the victim was unemployed until January 28, 2008, spending her days at her parents' home avoiding [Riley's] repeated telephone calls. (*See id.* at 48).

Around January 15, 2008, Creager called the victim again to inquire whether she would be present for a hearing scheduled for January 22, 2008.  (*See id.* at 49-50.)  Relating that she had finally terminated their relationship, [the victim] made clear to the officer she intended to appear for the preliminary hearing.  (*See id.* at 50.)  Later that night, answering one of Riley's phone calls to her home, the victim expressed the same intention to him.  (*See id.* at 52-53.)  From January 15 to January 17, Riley's calls to [the victim] increased to "hundred" each twenty-four (24) hour period.  (*See id.* at 50-51.)

Throughout the afternoon of January 17, 2008, [Riley] repeatedly called the victim's home, [the victim] answering and telling him to stop, and Riley responding by further calls after the blocking of his number.  (*See id.* at 53-54.)  As the victim hung up the phone after one such call, she looked out her window to see [Riley's] car pulling into her driveway.  (*See id.* at 54-55.) The victim testified at trial that after she denied his request for admittance through the front door, she observed [Riley] circle to the back of the home. (*See id.* at 61.)  [The victim] heard the glass on the back door break before

[Riley] flew into the living room and began striking her.  (*See id.* at 61-62.)
The Court will not recount in great detail [the victim's] testimony regarding
the brutal rape which followed.  (*See id.* at 62-72.)  The victim testified that
Riley took off her pants and underwear in the living room, punching and
putting his thumb into her right eye.  (*See id.* at 62-64.)  The victim
recounted how she walked down the stairs afraid [Riley] would push her,
how he threw her to the ground and began kicking her, thereafter forcing her
to perform oral sex and then urinating into her mouth.  (*See id.* at 64.)  Riley
then beat her over the head with a trash can, placed her on her own bed, and
raped her.  (*See id.* at 65-66.)

After [Riley] left, [the victim] telephone her grandmother and then 911.
(*See id.* at 67.)  The victim was examined and treated for her injuries at
Chambersburg Hospital, undergoing a rape kit.  (*See id.* at 77-79; C.T.E. No.
25-28 (photographs of victim's injuries from hospital), 29-30 (photographs
one (1) week later).)  After responding to the victim's home to secure the
scene, upon speaking with her and viewing her injuries, the police the same
date apprehended [Riley].  (*See* T.P. Trial, at 140:6-141:3.)

[Riley], who admits in his unsworn declaration he "hit her in the face with
[his] fists," maintained at hearing upon his Petition he did so only once,
following consensual sex and a lovers' quarrel precipitated by the victim's
jealousy.  (*See* Motion for Post Conviction Relief, filed June 18, 2010, Ex. A
(Riley's unsworn declaration); Transcript of Proceedings of PCRA Hearing,
Day 2, Wednesday, October 27, 2010 [hereinafter T.P. PCRA-2], at 269:20,
71:5-11.)  Indeed, Pennsylvania State Police Trooper Courtney Pattillo
testified at trial that the Defendant, who agreed to speak to him but refused
to make a written statement, admitted to being in the victim's home that day.
(*See* T.P. Trial, at 115-120.)  Pattillo testified [Riley] asserted he had
discussed a sonogram photograph of their son with the victim, and then he
had left after an argument which caused the damage to Vosburg's back door.
(*See id.*)

Though initially appointed counsel, at some point in January of 2008, with
the help of his father, [Riley] retained attorney Allen Welch, Jr., Esq., to
represent him.  (*See* Transcript of Proceedings of PCRA Hearing, Day 1,
Thursday, September 9, 2010 [hereinafter T.P. PCRA-11 at 13].)  Visitors'
logs from the Franklin County Jail show trial counsel visited the Defendant
on January 29, 2008, at which time the Defendant told Welch his version of
events.  (*See* Commonwealth Post Conviction Relief Exhibit Number

[hereinafter C. PCRA Ex. No.] 1 at 2; T.P. PCRA-2 at 28:15-30:18.)  On February 4, 2008, [Riley] filed a Motion for Modification of Bail, held February 22, 2008.  Both the victim, and [Riley's] prior paramour, Molly Hollinshead, testified at the hearing against the reduction of bail.  (*See* C. PCRA Ex. No. 10.)  By Order the same date, the Court denied the requested reduction and, in light of the evidence presented at the hearing, increased the amount required from two hundred thousand dollars ($200,000.00) to five hundred thousand dollars ($500,000.00).

The criminal information was filed on March 3, 2008, with [Riley] appearing and waiving arraignment March 5 after a meeting with trial counsel.  (*See* T.P. PCRA-2 at 34:8-35:7.)  Following a prosecution request for continuance granted April 18, 2008, the matter was set for call of the criminal trial list on June 20, 2008.  [Riley] and his attorney met for a short time on that date, as well as the day before.  (*See id.* at 35:8-36:11; C. PCRA Ex. No. 1 at 3, 4.)  At the call of the list, the Court issued an Order stating that "on colloquy [Riley] has indicated that he would like his case listed for the July trial term," and setting the matter for Pre-Trial Conference on July 3, 3008.  However, on July 3, [Riley] requested continuance, which was granted by the Court until the next trial term over the objection of the District Attorney.  (*See* Application for Continuance and Order of Court, July 3, 2008.)  Thereafter, on August 28, 2008, the Commonwealth filed a Motion for Transcripts requesting the transcript of the Defendants' testimony at the bail hearing be transcribed, which was granted the same date.  Also on August 28, the District Attorney filed a motion to briefly continue the scheduled Pre-Trial Conference, requesting the conference be held in conjunction with hearing upon a Motion to Consolidate, filed August 29, 2008, and set for hearing by Order of Court the same date.

On September 4, 2008, the Court held hearing upon the Motion to Consolidate, granting the request, and conducted a Pre-Trial Conference.  Jury selection was held as schedule on September 8, 2008.  The Franklin County Jail visitors' logs show Welch appeared on September 26 and 27 to meet with the Defendant in preparation for trial.  (*See* C. PCRA Ex. No. 1 at 5, 6).  A one (1) day trial by jury was held September 29, 2008, after which the jury determined Riley guilty on all counts.

(Doc. 12-10, p. 2-7).

On October 7, 2008, Riley filed a *pro se* Notice of Appeal. (*Id.* at 7).

Thereafter, the trial court entered an Order noting the untimely filing required no

action. (*Id.*). Sentencing was scheduled for January 7, 2009, but was continued on

Riley's request to January 28, 2009. (*Id.*). Following sentencing, on February 3,

2009, Riley filed another *pro se* Notice of Appeal and requested new counsel for

the appeal process. (*Id.* at 8-9). Counsel was approved by the Court on February

6, 2009. (*Id.* at 9). A counseled Notice of Appeal was filed February 26, 2009,

and the record transmitted to the appellate court. (*Id.*). However, on October 7,

2009, the appeal was dismissed because Riley failed to file a brief. (*Id.*).

Riley filed his counseled PCRA petition on June 18, 2010. (*Id.*). Riley's

PCRA Petition claimed that trial counsel was ineffective for the following reasons:

> 1.     Trial Counsel failed to review Commonwealth's evidence against the
> [Riley]. [Riley] did not have adequate time to review discovery material
> before the date of the trial; and in fact [Riley] saw some of the evidence for
> the first time on the date of the trial. As a result, if [Riley] was properly
> informed of all evidence against him, he would have accepted the plea
> agreement that the Commonwealth had offered prior to date of the trial.
>
> 2.     Trial Counsel failed to obtain and call an expert defense witness. All
> manners related to any injuries received by said victim and all medical
> testimony was not addressed by Trial Counsel, therefore, cross-examination
> was limited.
>
> 3.     Trial Counsel failed to inform [Riley] that it was highly unlikely that
> the Court or the jury would resolve issues of guilt in his favor. Trial
> Counsel did not discuss the maximum penalty of all his charges and/or the
> sentencing guidelines with [Riley] at any point during his representation.

4.     Trial Counsel failed to prepare [Riley] for testimony and/or cross-examination.  [Riley] wished to testify at trial but Trial Counsel never appeared at the Franklin County Prison prior to trial to discuss his testimony.  On the day of the trial after all the Commonwealth's evidence was presented, Trial Counsel discussed with [Riley] whether he would testify.  If prepared, [Riley] would have testified as to the facts contained in his statement attached hereto as Exhibit "A".

5.     Trial Counsel's trial strategy (including, but not limited to the failure to obtain and call an expert witness, failure to object to the entry of various evidential matters, adequately preparing [Riley] to testify and call [Riley] to testify) was so inadequate and fell so far below acceptable constitutional standards of effectiveness of counsel so as to constitute a violation of Defendant's constitutional right to counsel.

6.     Trial Counsel failed to inform [Riley] of his appeal rights and his right to file post trial and post sentence motions.  Trial Counsel informed [Riley] that the only issue he had was to tell the Courts that Trial Counsel was ineffective.

(Doc. 12-7, Ex. 6, p. 2-3 "Motion for Post-Conviction Relief").

The PCRA court set a hearing for September 9, 2010.  (Doc. 12-10, p. 8).

"Testimony was not completed on that date, and the Court held open the record for two (2) additional days of hearing, occurring on October 27, 2010 and November 18, 2010." (*Id.*).  The Court additionally directed Riley and the Commonwealth to provide written arguments comprehensively dealing with the law and facts at issue in the PCRA petition.  (*Id.*).  On March 3, 2011, the PCRA court denied Riley's petition.  (*See id.*).

On April 1, 2011, Riley filed a Notice of Appeal to the Pennsylvania Superior Court.  (Doc. 12-11, Ex. 10 "Notice of Appeal").  On December 16, 2011,

the Superior Court adopted and affirmed the PCRA Court's decision. (Doc. 12-16, Ex. 15 "Superior Court PCRA Appeal Decision").

On January 16, 2012, Riley filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania. (Doc. 12-17, Ex. 16 "Petition for Allowance of Appeal from Opinion and Order of Superior Court in Case No. 583 MDA 2011"). The Supreme Court of Pennsylvania issued an order on May 1, 2012, denying the Petition for Allowance of Appeal. (Doc. 12-19, Ex. 18 "Supreme Court of Pennsylvania Decision").

Riley filed his current federal habeas petition on October 3, 2012. (Doc. 1). In his habeas petition, Riley alleges ineffective assistance of counsel and cites to his PCRA Petition. (*Id.*). As such, Riley's current claims are the same as his PCRA claims and have been enumerated above. Respondents replied to Riley's habeas Petition on July 1, 2013. (Docs. 12, 13).

## II. DISCUSSION

### A. Habeas Corpus Generally

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Rather, federal

habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-8; *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Johnson v. Rosemeyer*, 117 F.3d 104 (3d Cir. 1997).

If review of the issues presented in a habeas petition on the merits is warranted, as is the case here, the scope of that review is set forth in 28 U.S.C. § 2254(d).  That section states, in relevant part, that exhausted claims[2] that have been adjudicated on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"  28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d)(2).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") places the burden on a petitioner to make this showing.  *Williams v. Taylor*, 529 U.S. 362 (2000).

---

[2] Habeas corpus petitions cannot be heard unless each claim was presented through "one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *see also Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004).  With the first claim being amended, both Petitioner and Respondent agree that Petitioner has met the exhaustion requirement.

**B.     Grounds Raised in Habeas Petition - Ineffective Assistance of Counsel Standard**

The jurisprudence governing a claim of ineffective assistance of counsel was established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), where the Court established a two-pronged test to evaluate Sixth Amendment claims of ineffective assistance of counsel.  The individual making this claim must show: (1) that "counsel's performance was deficient," which is measured by "reasonableness under prevailing professional norms;" and (2) that counsel's "deficient performance prejudiced the defense."  *Id*. at 687–90.

The state courts applied Pennsylvania's standard for ineffective assistance of counsel when deciding Riley's PCRA petition.  (*See* Doc. 12-10, Ex. 9; Doc. 12-16, Ex. 15).[3]  Therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, *i.e.*, the state court's decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland." *Werts*, 228 F.3d at 204.

---

[3] Pennsylvania's test for ineffective assistance of counsel is materially identical to the *Strickland* test.  *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

### 1.  Failure to Review the Commonwealth's Evidence or Explain Unlikelihood of Favorable Verdict

Riley alleges that he received ineffective assistance of trial counsel when trial counsel failed to review the Commonwealth's evidence with Riley.  (Doc. 1, Att. 1, p. 2).  Riley claims that had he been properly informed of all of the evidence against him he would have accepted the plea agreement offered to him by the Commonwealth.  (*Id.*).

In deciding this issue, the PCRA Court[4] noted that both parties stipulated that the Commonwealth's discovery packet was provided to trial counsel on April 18, 2008.  (Doc. 12-10, p. 16).  The PCRA Court also noted that, though Riley baldly asserted in his Petition that trial counsel never reviewed discovery materials with him, at the PCRA hearing Riley testified that trial counsel went over all the photographs provided by the Commonwealth when visiting him just days prior to trial, and reviewed the discovery packet.  (*Id.*).  Trial Counsel for Riley testified at the hearing that the discovery materials were reviewed with Riley in June of 2008, and then later in September of 2008.  (*Id.*).

The PCRA Court also found that trial counsel informed Riley of the "difficulties presented in his case, and the likelihood of defeat at trial."  (*Id.* at 17).

---

[4] As mentioned above, the Superior Court of Pennsylvania affirmed and adopted the opinion of the PCRA Court.  (Doc. 12-16, Ex. 15 "Superior Court PCRA Appeal Decision").

In support of this finding, the Court noted a letter Riley sent to trial counsel on September 17, 2008 in which Riley wrote "that he 'would like to discuss what you said me [sic] on my jury selection day (Sept 8, 08 [sic].'  (D. PCRA Ex. No. 3, at 1.)  He continues, '[y]ou told me we could not win at trial.' (*Id.*)." (*Id.*).

Further, the PCRA Court found that Riley stubbornly refused to take a plea involving jail time and insisted that the case go to trial.  (*Id.* at 17-20).  Specifically, the PCRA Court stated:

> It is difficult to imagine a clearer illustration of Riley's dishonesty in asserting this claim.  Later in the same letter [dated September 17, 2008], Riley asks what the two would do about "getting a better deal." [D. PCRA Ex. No. 3, at 1.]  Similarly, in an undated letter, authored sometime between June 20, 2008 and July 14, 2008, he states "[t]he only deal that am [sic] going to take [sic] is time served & probation, [sic] anything Other [sic] then that we are going to trial. (D. PCRA Ex. No. 4, at 2.)  Indeed, on cross examination at hearing, [Riley] admitted his stubborn refusal to take a plea involving jail time. (*See* T.P. PCRA-3 at 109:6-14 "I didn't want to take any other plea bargain because I was going to trial...I made that clear to my attorney").)
>
> [Trial counsel] testified that Defendant was offered a deal with a six (6) year minimum incarceration, but refused to take it, stating he would serve eighty-five percent (85%) of the time. (*See* T.P. PCRA-1 at 17:14-16; C. PCRA Ex. No. 2.)  At first, the Defendant even believed the victim might not appear to testify against him, and the case would be dismissed. (*See* T.P. PCRA-1 at 19:17-25.)  His letters to his attorney refer again and again to obtaining a deal for time served or probation, or to dismissal on the basis of Pennsylvania Rule of Criminal Procedure 600 or suppression of the evidence. (*See* D. PCRA Ex. No. 1 (Rule 600), 2 (suppression), 3 (better deal), 4 (better deal, Rule 600).)  As testified by [trial counsel] at hearing, [Riley] appears to have insisted he did not wish to serve a term of incarceration for his crimes, and refused to realistically consider his situation. (*See* T.P. PCRA-1 at 28:8-24; T.P. PCRA-3 at 24.)
>
> [Trial counsel] expressed his frustration in speaking with [Riley] about his case, comparing his efforts to impel the Defendant to testify or

consider a realistic plea to "talking to a brick wall."  (T.P. PCRA-3 at 25:14-22.)  A memorandum authored for [trial counsel's] file on September 27, 2008, after meeting with Defendant in preparation for trial, also recount [trial counsel] told Riley proceeding to trial was a mistake.  (*See* C. PCRA Ex. No. 2 ("We discussed a number of things, including:  1. My belief that he is making a mistake by going to trial[.]").)  An exchange at the Pre-Trial Conference, after the Court inquired whether any offers for resolution had been made and during which Riley was present but did not contradict his attorney's statements, also illustrates it was [Riley], not counsel, who insisted on trial:

> The Court:  Where do we stand with offers for resolution of this case?  [B]ecause I want to know if this is going to be resolved prior to selecting a jury.  I also want the Defendant to be sure he is aware of any offers that have been made.
>
> Mr. Welch:  One offer was made.  I took it to the Defendant at the county prison.  ***We discussed it at length.  He flatly rejected it and demanded a trial.  Nothing but a trial.  He indicated to me that there was no resolution that could be had except for trial.***
>
> ...
>
> The Court:  Make sure I understand.  First, was the offer communicated to you for resolution of this case?
>
> The Defendant:  Yes, ma'am.
>
> The Court:  Okay.  So your attorney did that.  You rejected that offer.
>
> The Defendant:  Yes, ma'am.
>
> The Court:  It's your desire to go to trial.
>
> The Defendant:  Yes, ma'am.
>
> …
>
> The Court:  Do you have any questions that I can provide so that you're not in the dark regarding what's happening?
>
> The Defendant:  No.  But I just like to have more time to discuss some things in private with my attorney that I didn't get to discuss with him.
>
> The Court:  Okay.  Mr. Welch.
>
> Mr. Welch:  He certainly will.  That will be done, Your Honor.  I reviewed all the police reports with him, all the discovery we had up to that point in time that I last sat down with him.  Frankly there's been nothing to discuss because the most recent discovery that has come in has been somewhat recent.  Now we'll be down to see him before trial.  Perhaps even after we select on Monday I can sit down with him and review some of that.  ***My concern is that Marcus has***

> ***been adamant to get the trial as fast as he can.  Ms. Sulcove has been most cooperative helping me move this along so we can get to trial as quickly as we can so I can keep my client happy in that regard.***
>
> (D. PCRA Ex. No. 6, Transcript of Proceedings in Pretrial Conference, at 11:15-24, 13:18-25, 14:11-15:6 (emphasis added).)  [Riley] was informed of the risk in going to trial, but stubbornly refused to consider a plea bargain, hoping instead to defeat the charges on technical grounds.  As the trial date neared, his attorney tried without success to alter his determination not to take the stand.  It was [Riley], not his attorney, who made the decision to proceed, even after viewing the Commonwealth's evidence against him.  His attorney was not ineffective for following Riley's wishes in areas of authority that clearly rest with the client, and that the client alone can decide.  *See Commonwealth v. Forbes,* 299 A.2d 268, 271 n. 2 (Pa. 1973) (certain basic decisions within province of lawyer, others belong to client; requirement that guilty plea be knowing and voluntary reflects "that it is the defendant who must make the choice").

(*Id.*).

The state court's finding in respect to this claim is not contrary to nor does it involve an unreasonable application of the federal standard set forth above for ineffective assistance of counsel.  Nor does the record suggest that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Counsel's performance was not deficient because he reviewed the Commonwealth's evidence with Riley and explained to Riley the unlikelihood of a favorable verdict at trial.  For these reasons, this ground raised by Riley in his Petition is found to be without merit.

## 2.  Failure to Discuss Sentencing Guidelines, Maximums

Riley alleges that he received ineffective assistance of trial counsel when trial counsel failed discuss possible maximum penalties of the crimes for which Riley was charged.  (Doc. 1, Att. 1, p. 2).  Riley asserts that "had such conversation taken place, he would have understood the severity of the charges he faced, and could therefore have made an informed decision on whether or not to take a plea." (Doc. 12-10, p. 20).

In deciding this issue, the PCRA Court first explained that Riley failed to cite any case law which would deem counsel ineffective for not discussing the maximum penalties where a trial occurs.  (*Id.*).  The PCRA court noted that, while in the context of a plea the maximum penalties and guidelines should be reviewed so as to make sure a plea is knowing, intelligent, and voluntary, there was no such duty to review the maximum possible penalty which may be imposed in all cases. (*Id.* at 20-21).  The PCRA court then noted that it believed Riley was aware of the severity of the charges against him at the time he chose to refuse a plea bargain and proceed to trial, citing various letters Riley had written to trial counsel.[5]  (*Id.* at 21).

---

[5] The PCRA court explained:

> The letters sent to [trial counsel] contain numerous statements demonstrating Riley's recognition.  In one letter, Riley writes that [trial counsel] is "the only hope I got [sic] get out of here too [sic] my son."  (D. PCRA Ex. 2).  In another, he tells counsel to get a better deal, because he has "2 son's [sic] and I am tireing [sic] [sic] be back in there [sic] lives.  Before they are grown up."  (D. PCRA Ex. 3.)  Statements that Riley's "freedom and life" are in  [trial counsel's] hands further demonstrate his awareness of the severity

At the PCRA hearing, trial counsel testified that he discussed the sentencing

guidelines, including the standard range, with Riley not just once, but twice.  (*Id.* at

22).

The state court's finding with respect to this claim is not contrary to nor does

it involve an unreasonable application of the federal standard set forth above for

ineffective assistance of counsel.  Nor does the record suggest that the state court's

decision was based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding.  Trial counsel was not ineffective

because Riley was aware of the seriousness of the offenses for which he was

charged and Riley and counsel discussed the sentencing guidelines.  For these

reasons, this ground raised by Riley in his Petition is found to be without merit.

## 3.  Failure to Offer Expert Testimony or Related Evidence at Trial

Riley also alleges that he received ineffective assistance of trial counsel

because counsel failed to obtain and call an expert witness and failed to offer

related evidence at trial.  (Doc. 1, Att. 1, p. 2; Doc. 12-10, p. 22).  In deciding this

issue, the PCRA Court considered Riley's various expert testimony and related

---

of the consequences he faced.  (D. PCRA Ex. 3.)  Indeed, he even wrote in his letter
dated September 25, 2008, "I am facing some real [sic] Serious charges & this is a real
[sic] crucial time for me, so please understand that my Life & freedom is [sic] on the line
here."  (D. PCRA Ex. 7, at 2.)

(Doc. 12-10, p. 21).

evidence claims.  (Doc. 12-10, p. 22-26).  In addressing these issues that PCRA

court found:

> To establish ineffective assistance of counsel for failure to call a witness, a defendant must prove "the witness existed and was available to testify for the defense, counsel knew or should have known the witness existed, the witness was willing to cooperate, and the proffered testimony's absence denied him a fair trial." *See Commonwealth v. Small,* 980 A.2d 549, 571 (Pa. 2009).  [Riley] has the burden of proof in demonstrating counsel "had no reasonable basis for failing to call a particular witness." *Id.*
>
> As to any possible expert witness, [Riley] has failed to identify an existing expert whose testimony would have aided in his defense.  [Trial counsel] testified to discussing the possibility of hiring an investigator with [Riley's] father during their initial meeting.  (*See* T.P. PCRA-3 at 9:18-12:13.)  While [Riley] asserts the failure to retain such a person constitute ineffectiveness, he has identified neither an individual who would have served, nor any evidence which could have been gleaned from investigation which would have been helpful to his case.  Indeed, though [trial counsel] admitted to considering such an individual, the attorney also testified that as the case progressed, he saw no benefit from retaining one, there being little favorable evidence to be gleaned for the cost.  (*See id.* at 41:6-42:1.)  Thus, counsel had a reasonable basis for failing to retain an investigator.  Neither has [Riley] demonstrated prejudice, as he cannot point to any evidence which would have been found that would alter the result of trial.
>
> As to any DNA Reports, [Riley] argued at trial, and asserts he would have testified, that the sex was consensual.  Thus, he in effect admitted sexual intercourse occurred, so that there was no purpose in calling an expert regarding the DNA obtained during the victim's rape kit.  [Riley] admitted he was present in the victim's home near the time of the attack, and counsel clearly argued that the two had consensual intercourse.  Thus, there was also no purpose in expert testimony to refute evidence regarding the age of the spermatozoa retrieved from the victim.  Similarly, counsel's rationale for not testing the blood found on the victim's comforter is very reasonable.  The district attorney did not choose to analyze the fluid to determine its source, and in light of the fact it is the Commonwealth's burden to prove the identity of the source, the defense may not have been served by a dispositive answer. (*See* T.P. PCRA-a at 25.)  Counsel did not believe the blood would have been matched to anyone other than the victim or [Riley], and did not want either dispositive answer in evidence.  (*See id.*)

[Riley] also asserts an expert could have testified to the medical evidence showing a lack of vaginal trauma in the victim, and how such lack is inconsistent with a claim of rape. No affidavits or other evidence have been submitted to support this claim. *Cf. Commonwealth v. Walls,* 993 A.2d 289, 302 (Pa. Super. Ct. 2010). Further, the jury was made aware of the lack of trauma, which was in medical records submitted as evidence, and testified to by the Sexual Assault Nurse Examiner. (*See* T.P. Trial, at 155:2-8.) However, the examiner also testified such a find would have been uncommon, as tearing, bruising or marks are rarely found in the case of a rape of a sexually active adult female. (*See id.* at 155:18-21.) Only in cases where rape has occurred using a blunt object would a nurse examiner expect to see such injuries. (*See id.* at 15:21-156:1.) [Riley] has failed to demonstrate the existence of any expert who would testify to the contrary, that a lack of vaginal trauma indicates consensual sex, and indeed, the Court questions whether such an expert exists. Riley has also failed to demonstrate prejudice. Counsel brought out on cross-examination the lack of any physical trauma found in the exam. (*See* T.P. Trial at 159:19-160:8.) Counsel also emphasized the lack of physical trauma during closing, contrasting the troopers' reports with the nurse's finding in the exam. (*See id.* at 172-75). The jury was aware of the lack of physical trauma to the victim's lower body, but returned a guilty verdict nonetheless.

[Riley] asserts counsel was ineffective for failing to obtain an expert to test a soda can into which he alleges he urinated before an argument with the victim which began because of her jealousy following consensual sex. Such an analysis, he argues, would have bolstered the credibility of his version of events. Trial counsel testified to having knowledge of the Defendant's version of events and the existence of the soda can. (*See* T.P. PCRA-3 at 7:22-8:10.) However the implication from counsel's testimony was that at the time he was told such fact by [Riley], so much time had passed from the date of the incident he did not believe the can could be obtained. (*See id.* at 8). [Trial counsel] recalled an informal discussion with the district attorney on the subject. (*See id.*) Further, the Court has adjudged [Riley] incredible, finding his version of events contradictory, inconsistent, and unbelievable. Indeed, the Court finds it likely a test of the can would have yielded evidence which was detrimental to his case. If the can had been tested and his urine was absent, Riley's version of events would have been disproven rather than supported. Thus, a reasonable basis existed for the failure to test the can, and there was no prejudice to the defense from such omission.

At trial, the victim testified [Riley] urinated into her mouth while forcing her to perform oral sex. [Riley] asserts an expert should have been obtained to testify to "a male's ability to urinate while such sexual act is performed." (Def. Br. at 8.) [Riley] does not identify an expert who would testify urination is impossible during a sex act, that such an expert was available or willing to testify on his behalf, or even provide any evidence to show the truth of such an assertion regarding male biology. No affidavits or other evidence have been submitted to support such a claim. [Riley] has failed to meet his burden to prove his entitlement to relief on this issue.

Finally, [Riley] asserts counsel should have obtained his telephone records from the day of the incident. Because he maintains an argument with the victim occurred as the result of a text (or voicemail) to his phone, [Riley] argues the records would have corroborated his story. First, the Court notes that [trial counsel] testified he did not recall [Riley] telling him about the text message (or voicemail). (*See* T.P. PCRA-3 at 8:22-9:11.) Counsel has a duty to conduct a reasonable investigation and "pursue all reasonably available avenues of developing mitigation evidence." *Commonwealth v. Miller*, 987 A.2d 638, 666 (Pa. 2009) (citations omitted). However, the reasonableness of an investigation may depend upon the information relayed to counsel by a defendant. *See id.* (citations omitted). Indeed, it has been held that "trial counsel cannot be faulted for failing to obtain evidence of which he had no reason to be aware." *Id.* at 667. Here, if [Riley] did not tell [trial counsel] about the text (or voicemail) he received, counsel could not have known to obtain such records or call a witness regarding them.

Further, Defendant has not adequately demonstrated prejudice, as the Court does not believe the result of the proceedings would have been altered by introduction of the records. Such records were obtained by PCRA counsel prior to hearing, and they proved as detrimental to the Defendant as helpful. The records show calls to the victim's phone number, [ ], beginning at 3:31 p.m. (*See* D. PCRA Ex. No. 15 at 7.) Each call is one minute long, explained by [Riley] as a result of his dropping the cell phone into the snow shortly before the date of the incident. (*See* T.P. PCRA-3 at 80:13-81:18.) The existence of a twelve (12) minute call later that night, shown clearly on the records, calls this excuse into question. Rather, the repeated one (1) minute calls to the victim's residence support her version of events, involving repeated harassing calls from Riley prior to his unannounced appearance at her home. Additionally, the victim alleged the rape occurred at 4:15, so it is equally possible the call to Defendant's voicemail occurred prior to his entry into the home – no further calls are shown until 6:18 p.m.

[Riley] has not demonstrated prejudice, as the records would have likely hurt his cause more than aiding it.

(*Id.*).

We agree with the state court's findings with respect to the above issues. Riley failed to show that his alleged expert witnesses existed and were available to testify.  Further, Riley has failed to meet the standards set forth in *Strickland* in relation to his claims regarding ineffective assistance of counsel with respect to expert testimony and related evidence.  The state court's finding in respect to Riley's claims concerning expert testimony and related evidence is not contrary to nor does it involved an unreasonable application of the federal standard set forth above for ineffective assistance of counsel.  Nor does the record suggest that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  For these reasons, this ground raised by Riley in his Petition is found to be without merit.

### 4.  Failure to Advise/Prepare Riley to Testify

Riley also alleges that trial counsel was ineffective for failing to prepare Riley for testimony or cross-examination.  Riley specifically alleges that he wanted to testify at trial but that trial counsel "never appeared at the Franklin County Prison prior to trial to discuss his testimony.  On the day of the trial after all the Commonwealth's evidence was presented, Trial Counsel discussed with the Defendant whether he would testify." (Doc. 1, Att. 1, p. 3).  Further, the PCRA

Court noted that Riley claimed in his PCRA Petition that Riley's trial counsel "did not properly inform him the determination of whether or not to testify was his, but instead simply told him he would not be testifying despite his own desire to do so." (Doc. 12-10, p. 26).  Attached as an exhibit in support of his Petition, Riley has included a statement explaining the facts to which he would have testified.  (Doc. 1, Att. 1. Ex. A).

In deciding this issue, the PCRA Court explained that in order to sustain a claim the trial counsel was ineffective for failing to call Riley, "a PCRA petition must show 'either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.'"  (Doc. 12-10, p. 27 *citing Commonwealth v. Carson,* 741 A.2d 686, 699 (Pa. 1999).  The PCRA Court further explained that a "defendant who made a knowing, voluntary, intelligent waiver of testimony may not later claim ineffective assistance of counsel for failure to testify."  (*Id. citing Commonwealth v. Lawson,* 762 A.2d 753, 755 (Pa. Super. Ct. 2000).

Initially, we note that the PCRA Court ultimately found Riley to be incredible and trial counsel "far more credible than [Riley] on this issue."[6]  The PCRA Court then discussed trial counsel's testimony at length noting that trial

---

[6] The factual findings and credibility determinations of the state court are presumed correct on habeas review.  *See* 28 U.S.C. § 2254(d); *Stone v. Beard* 2009 WL 1874067, *4 (E.D. Pa. 2009).  Petitioner has failed to establish any argument to rebut this presumption and the Court finds no circumstances that exist to rebut this presumption.  *Id.*

counsel wanted Riley to testify[7] and advised him to do so.  (*Id.*).  Trial counsel

further testified that Riley "feared to take the stand because he believed the

Commonwealth would be able to cross-examine him on his past violent acts

toward women."  (*Id.* at 28 *citing* T.P. PCRA-1 at 22:1-22:24).  In response to this

fear, trial counsel testified that he then explained to Riley the "Rule of Evidence

relating to prior convictions and uncharged bad acts, and explained the concepts of

'opening the door' or the need for another exception to introduce such conduct,

such as establishment of a pattern of action."  (*See id.*).  The PCRA Court found

that Riley refused to testify – noting that trial counsel admitted Riley's concerns

about testifying were logical and understandable.[8]  (*Id.*).  The PCRA Court also

notes the possibility of Riley being impeached on cross-examination with his

testimony at the bail reduction hearing.[9]  (*Id.* at 28-29).

---

[7] Trial counsel wanted Riley to testify, "as without him there would be little means of putting [Riley's] version of events before the jury."  (Doc. 12-10, p. 27 *citing* T.P. PCRA-1 at 23:4-12).

[8] As further explained by the PCRA Court,

> …a misstep during [Riley's] testimony could have resulted in the admission of his prior crimes.  [*See* T.P. PCRA-1 at 28-25-29:8.]  The prior crimes of [Riley] were indeed a proper concern both for him and for his counsel.  Indeed, while the crimes were inadmissible for the purpose of proving guilt, they might have been admissible for another purpose.  *See Commonwealth v. Paddy,* 800 A.2d 294, 307 (Pa. 2002) ("the same evidence may be admissible for various legitimate purpsoes").

(Doc. 12-10, p. 28).

[9] As more fully explained by the PCRA Court,

> At the bail hearing, the Commonwealth questioned Riley concerning prior harassment and assault of a girlfriend as a juvenile.  (*See* D. PCRA Ex. 5 at 5:15-6:1.)  The District Attorney also asked about an assault on the mother of Riley's oldest child, Molly

The PCRA Court also noted that, at the Pre-Trial Conference, trial counsel "stated to the Court [Riley] would likely testify…" (Doc. 12-10, p. 27; Doc. 13-6, Ex. E, 11:10-11-14 "Transcript of Proceedings of Pretrial Conference"). The PCRA Court finally noted that Riley was colloquied by trial court regarding his determination whether or not to testify. (Doc. 12-10, p. 29 *citing* T.P. Trial at 168:13-169:10). The PCRA Court explained that "[d]uring the exchange, Riley stated he understood the decision was his, that he made the determination voluntarily and was not subject to threats or force thereupon, and had no questions regarding his right to present testimony on his behalf." (*Id. citing* T. Trial at 168-69).

The PCRA Court ultimately found:

> As the Superior Court commented in *Wallace,* "while, in retrospect, appellant may believe [his] failure to testify prejudiced [him], the fact remains that [the] decision was fully informed and voluntary." *Commonwealth v. Wallace,* 500 A.2d 816, 819-20 (Pa. Super. 1985). Thus, "neither trial counsel nor appellate counsel may be deemed ineffective in this regard." *Id.* The Court believes contrary to the advice of counsel, [Riley] freely and voluntarily decided not to take the stand in his own defense. As a result, while [Riley] maintains he was not prepared by counsel to testify, there was clearly no reason to prepare, as [Riley] refused to take the stand. Riley cannot now call counsel ineffective because he failed to heed the attorney's advice in making a determination that was solely [his] to make.

---

Hollinshead, the Protection from Abuse (PFA) Order which resulted, and [Riley's] violation thereof. (*See id.* at 6:2-7:16.) Incidents wherein the Defendant's mother was his victim were also discussed, as well as the assaults for which Riley was currently jailed. (*See id.* at 7:17-8:14.)

(Doc. 12-10, p. 28-29).

(*Id.* at 29-30

 We agree with the state court's findings with respect to the above issues, and find that they not contrary to nor involve an unreasonable application of the federal standard set forth above for ineffective assistance of counsel.  Nor does the record suggest that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  For these reasons, this ground raised by Riley in his Petition is found to be without merit.

## 5.  Failure to Inform Defendant of his Appeal Rights

 Riley alleges that he received ineffective assistance of counsel when trial counsel "failed to inform [him] of his appeal rights and his right to file post trial and post sentence motions.  Trial Counsel informed [Riley] that the only issue he had was to tell the Courts that Trial Counsel was ineffective."  (Doc. 1, Att. 1, p. 3).  In deciding this issue, the PCRA Court initially discussed ineffective assistance of counsel relating to appeals explaining that the Pennsylvania Supreme Court "held that a claim of ineffective assistance for failure to file a requested appeal need not show the appeal would have been successful, but only that the appeal was requested and counsel failed to act."  (Doc. 12-10, p. 30 *citing Commonwealth v. Bath,* 907 A.2d 619, 622 (Pa. Super. Ct. 2006) (*citing Commonwealth v. Lantzy,* 736 A.2d 564, 571 (Pa. 1999)).  The PCRA Court also explained that "[t]here is no

need to make a specific showing of prejudice in such case, as the unjustified failure to file a requested appeal is prejudicial in and of itself." (*Id. citing Commonwealth v. Liebel,* 825 A.2d 630, 635 (Pa. 2003)).

The PCRA Court noted that trial counsel testified that Riley never requested that he file a direct appeal on Riley's behalf. (*Id. citing* T.P. PCCRA-1 at 26:3-5, 29:19-27-6). The PCRA Court also noted that Riley never testified that he requested trial counsel to file an appeal for him.[10]   (*Id.* at 30).

The PCRA Court then discussed the constitutionally imposed duty of counsel to consult with Riley about the appeal. (*Id.*). Trial counsel would have "a constitutionally imposed duty to consult with a defendant about an appeal, if there is reason to believe either:  (a) a rational defendant would wish to appeal as non-

---

[10] The following exchange occurred during the PCRA hearing between Riley and Mrs. Sulcove, attorney for the Commonwealth:

> Q:  You're also telling me here today that your attorney never advised you of your right to appeal?
>
> A:  No.  He sat over there the day I got sentenced.  He told me the only thing I have to do is fall back on him now.  That's what he said.
>
> Q:  Fall back on a PCRA?
>
> A:  Yeah.  He didn't say PCRA.  He said fall back on him.  I didn't know what that means.  I didn't know nothing of what it meant.  I mean, I remember him saying those words to me.
>
> Q:  You were in court.  You heard Judge Van Horn give all the direction on how to file an appeal, correct?
>
> A:  Yes, she went over that with me.

(Doc. 13-3, 109:15-110:1 "Transcript of Proceedings of PCRA Hearing Day 2").

frivolous grounds therefore exist; or (b) the particular defendant expressed to counsel interest in appealing." (*Id. citing Commonwealth v. Town,* 781 A.2d 1250, 1254 (Pa. Super. Ct. 2001)).

The PCRA Court summarized trial counsel's testimony regarding the appeal, with trial counsel testifying that he did not feel any meritorious issues existed for direct appeal and that "because no issues existed they[11] may wish to proceed to a petition for post-conviction relief and review his performance." (*Id.* at 31). The PCRA Court then explained the lack of prejudice in regards to the portion of the claim. (*Id.* at 31-32). First the PCRA Court noted that Riley himself took a direct appeal in his case. (*Id.*; *see also* Doc. 1; Doc. 13-7, Ex. F "Notice of Appeal"). In fact, the Trial Court appointed new counsel for Riley's direct appeal "after receipt of a letter from Mr. Riley relating Welch had not been retained to conduct the appeal." (*Id.* at 31). The PCRA Court additionally explained that, whether or not trial counsel informed Riley or not, Riley was aware of his right to appeal. (*Id.* at 32). Riley admitted, and the sentencing transcripts show, that the Trial Court informed Riley of his right to appeal, and the time within which it was necessary to do so. (*Id.*). Ultimately, the PCRA Court found that this issue was without merit.

---

[11] The testimony of trial counsel explains that he could not recall whether he discussed the appeal issues with Riley, Riley's father, or both. (Doc. 13-4, 25:23-26:2 "Transcript of Proceedings of PCRA Hearing Day 1").

We agree with the state court's findings with respect to whether Riley received ineffective assistance of counsel in regards to his appeal rights. The PCRA Court's decision is not contrary to nor does it involve an unreasonable application of the federal standard set forth above for ineffective assistance of counsel. Nor does the record suggest that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For these reasons, this ground raised by Riley in his petition is found to be without merit.

## 6. Constitutionally Deficient Strategy

Riley also alleges that he received ineffective assistance of counsel because

Trial Counsel's trial strategy (including, but not limited to the failure to obtain and call an expert witness, failure to object to entry of various evidentiary matters, adequately prepare [Riley] to testify and call [Riley] to testify) was so inadequate and fell so far below acceptable constitutional standards of effectiveness of counsel so as to constitute a violation of Defendant's constitutional right to counsel.[12]

(Doc. 1, Att. 1, p. 3).

In deciding whether Riley received ineffective assistance of counsel because of constitutionally deficient strategy, the PCRA Court explained that "[e]valuation

---

[12] The Court notes that issues regarding expert witnesses and Riley's testimony have already been discussed above, and will not be revisited in this section. Further, to the extent that Riley's allegations concerning objections to the entry of various evidentiary matters have not been discussed, Riley fails to identify what evidentiary matters trial counsel failed to object to and why counsel was ineffective for failing to object to those evidentiary matters. In any event, these matters do not appear to have been addressed by the state courts. As such, the Court cannot meaningfully address this claim, thus we will not consider it.

of trial counsel's performance is 'highly deferential.'" (Doc. 12-10, p. 32 *citing*

*Commonwealth v. Basemore,* 744 A.2d 717, 735 (Pa. 2000)).  Strategic decisions

that are "elected 'after a thorough investigation of law and facts, [are] virtually

unchallengeable.'" (*Id.* at 32-33 *citing Basemore,* 744 A.2d 717 (*citing Strickland,*

466 U.S. at 690-91)).  However, "strategic choices made following a less than

complete investigation are reasonable precisely to the extent that reasonable

professional judgment supports the limitation of the investigation." (*Id.* at 33

*citing Basemore,* 744 A.2d 717).   The PCRA Court noted that the reasonableness

depends on large part upon what information is supplied by a defendant and

"cannot be based upon the distorting effects of hindsight." (*Id. citing*

*Commonwealth v. Fears,* 836 A.2d 52, 72 (Pa. 2003) (*citing Strickland,* 466 U.S. at

689)).

    Further, the PCRA Court noted it had to evaluate trial counsel's approach in

light of available alternatives, explaining ineffectiveness could be proven only

where "the alternative approach would have offered a potential for success

substantially greater than the tactics used." (*Id. citing Commonwealth v. Pierce,*

527 A.2d 973, 976 (Pa. 1987)).  When looking at the reasonableness of trial

counsel's approach, the PCRA Court noted it must discern whether counsel's

approach had *any* reasonable basis, not whether there were other more logical

courses of action to pursue.  (*Id. citing Commonwealth v. Steele,* 961 A.2d 786, 797 (Pa. 2008)).

During the PCRA Hearing, trial counsel testified that he considered three (3) options he considered in defending the case and placing Riley's version of events in front of the jury:

(1) call Riley to the stand;

(2)  call Molly Hollinshead to the stand;

(3)  attempt to question the victim about a sonogram picture Riley alleged he had been given the day of the rape to show that Riley and the victim's meeting was amiable.

(*Id.* at 33-34 *citing* T.P. PCRA-3 at 16:22-17:21).  The first option did not pan out, as Riley refused to take the stand.  Riley's decision to not take the stand and whether counsel was ineffective in this regard is fully discussed in Section 4 above and does not bear repeating.  The Court does emphasize, however, that trial counsel testified that "he had great difficulty with the case, due to [Riley's] refusal to testify, such testimony being his preferred method of proceeding, and recognizing the defense would have been aided by Riley recounting his version of events himself."  (*Id.* at 34 *citing* T.P. PCRA-3 at 25:14-22; C. PCRA Ex. No. 2).

Trial counsel testified that he did not follow through with the second option acknowledging that "he did consider calling [Molly Hollinshead], but also considered her a loose cannon, and felt placing her on the stand was extremely

risky." (*Id.* at 40 *citing* T.P. PCRA-3 at 16:4-9).  Trial counsel also testified that

"[t]he relationship between Hollinshead and [Riley] had been volatile and violent,

and counsel was concerned to allow the Commonwealth to put such evidence

before the jury." (*Id.* at 40-41 *citing* T.P. PCRA-3 at 16-19).  Further, trial counsel

testified that at the bail hearing, "Hollinshead exuded palpable anger toward

[Riley], and that she and the victim appeared very unified against Riley, even

holding hands at one point and glaring in his direction." (*Id. citing* T.P. PCRA-3

54:23-58:2, 64:1-17).

The PCRA Court found that any claim surrounding counsel's failure to call

Molly Hollinshead failed because there was not a sufficient showing that

Hollinshead was willing to testify for Riley and that Riley failed to show prejudice.

(Doc. 12-19, p. 39).  The PCRA Court noted Hollinshead's negative testimony at

the bail hearing (including Riley's assault against her, the PFA she had against

Riley, and her fear of Riley) and trial counsel's testimony that he had attempted to

interview Hollinshead, but that she refused to meet with him prior to trial.  (*Id.* at

40 *citing* C.E. No. 10 and T.P. PCRA-3 at 16:10-21).  Further, the PCRA Court

found that there was a "reasonable strategic bases for failing to call Hollinshead."

(*Id.*).  Finally, the PCRA Court noted that Riley had not demonstrated that

Hollinshead's testimony would have been beneficial under the circumstances

noting Hollinshead's testimony at the bail hearing, the relationship between Riley

and Hollinshead, and Hollinshead's failure to appear to testify at the PCRA

Hearing.  (*Id.* at 40-41).  The PCRA Court found that Riley failed to prove his

entitlement to post-conviction relief for failure of trial counsel to call Hollinshead.

Trial counsel's third option was to question the victim about the sonogram

picture.  (*Id.* at 34; *see also* Doc. 13-5, Ex. D, 17:13-17).  However, trial counsel

testified that the "problem with that was that when she was shown the sonogram,

she said she had given it to him in December which was a substantially different

time from what we were told."  (Doc. 13-5, Ex. D, 17:14-17).

In explaining his ultimate trial strategy, trial counsel testified that he "felt

based on the lack of trauma alone, lack of any sort of medical identifiable trauma

to her, that I could make a viable argument to a jury."  (*Id.* at 17:19-21).  The

PCRA Court summarized that trial counsel "emphasized the Commonwealth's

burden, the lack of medical evidence, and implied a less than comprehensive

investigation by police."  (Doc. 12-10, p. 34 *citing* T.P. Trial at 33-34).  Trial

counsel's strategy "further included admitting that [Riley] had hit the victim, but

denying there was any sexual assault."  (*Id. citing* T.P. Trial at 34:18-24).

Additionally, trial counsel emphasized the victim's version of events with the lack

of physical evidence on the victim's body and in the room where the rape occurred.

(*Id.* at 34-36).

Trial counsel also attacked the victim's credibility "gently during her cross-examination, not wishing to allow her to reinforce her answers or arouse sympathy for her with the jury." (*Id.* at 35 *citing* T.P. PCRA-3 at 29:7-31:13).  Trial counsel forced the victim's admission of a restraining order entered against her by Riley's mother, discussed the victim's description of the attack and the lack of corroborating physical evidence, and asked the victim whether she told Molly Hollishead that she made the incident up.[13]  (*Id.*).  Any failure on the part of trial counsel to cross-examine the witness regarding her inconsistencies was found to have not resulted in prejudice to Riley as well, the PCRA Court noting trial counsel's strategy of "treading delicately with such victims given their sympathetic nature." (*Id.* at 39).  Further, the "various documents examined during the PCRA hearing, and the slight inconsistencies they contain, were before the jury for consideration." (*Id.*).

The PCRA Court explains that trial counsel failed to impeach the victim on a juvenile conviction for retail theft,[14] and that absent a reasonable strategic basis, "the failure to utilize such a prior crime for impeachment of a key witness is considered ineffective assistance. *See Commonwealth v. Baxter,* 640 A.2d 1271, 1274-75 (Pa. 1994)." (*Id.* at 37). Because trial counsel was not aware of the past

---

[13] The victim denied telling Molly Hollinshead that she made the incident up.  (*See* Doc. 13-2, Ex. A, 91 "Trial Transcript").

[14] "Evidence of a witness's prior conviction for a crime involving dishonesty or a false statement is generally admissible for impeachment purposes.  *See* Pa. R.E. 609(a)." (Doc. 12-10, p. 37).

conviction, the PCRA Court found no reasonable basis "where counsel did not investigate the victim's prior record past the information given by the Commonwealth, [Riley], and [Riley's] father, and thus did not make an actual election whether or not to use the prior crime." (*Id.* at 38). However, the PCRA Court failed to find that Riley was prejudiced by this omission because the Commonwealth's evidence presented at trial bolstered the victim's testimony. (*Id.* at 38-39). The PCRA Court explained prejudice is not "simply demonstrated by showing the jury would have reevaluated the credibility of a particular witness, but that such reexamination 'would in turn have caused a different verdict.'" (*Id.* (internal citations omitted). The PCRA Court found that it was "highly doubtful such a minor juvenile offense would have altered the result of the trial." (*Id.* at 39).

We agree with the state court's findings with respect to the above issues. The state court's finding in respect to whether trial counsel was ineffective for a constitutionally deficient strategy is not contrary to nor does it involve an unreasonable application of the federal standard set forth above for ineffective assistance of counsel. Nor does the record suggest that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For these reasons, this ground raised by Riley in his petition is found to be without merit.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003).  In this instant matter, jurists of reason would not find the disposition of Petitioner's case debatable.  As such, no COA will issue.

## IV.   CONCLUSION

Accordingly, for the reasons discussed above, we will deny Riley's habeas petition.  We find nothing unreasonable with the state court's treatment of Riley's claims and note that we evaluate state courts' determinations of ineffectiveness under a "doubly" deferential standard.  *See Knowles v. Mirayance,* 556 U.S. 111 (2009); *See also Harrington v. Richter,* __ U.S. __, 131 S. Ct. 770, 778 (2011).  A certificate of appealability will not issue.  An appropriate Order will follow.